UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 13 CR 50063-1 |
| | ) | Judge Iain D. Johnston |
| Perry King, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

  Defendant Perry King has filed a motion under the First Step Act seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) because of (1) his risk of complications from COVID-19 due to high blood pressure; and (2) changes in sentencing laws under which he would no longer be an armed career criminal subject to a 15-year minimum sentence. For the reasons that follow, Mr. King's motion [44] and supplemental motion [49] are denied.

## BACKGROUND

  On June 16, 2014, Mr. King was indicted on one count of possession with intent to distribute heroin, *see* 21 U.S.C. § 841, and one count of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g). Dkt. 2. In his plea agreement, the government dropped the heroin offense in exchange for him pleading guilty to the firearm offense, as well as his agreement that he was an armed career criminal because of three previous state convictions for a violent felony or a serious drug offense: a 1997 conviction for aggravated battery, a 2005 conviction for domestic battery, and a 2008 conviction for aggravated battery. Dkt. 28 at 6-7, 9. Under the Armed Career Criminal Act, 18 U.S.C. § 924(e), a person who violates § 922(g) and has three previous convictions for a violent felony or serious drug offense is subject to a minimum sentence of 15 years' imprisonment. At his October 1, 2014, sentencing United States District Judge Kapala, who has since taken inactive senior status, adopted the sentencing calculations set out in Mr. King's Presentence Investigation Report, including that he was an armed career criminal. Dkt. 40. Judge Kapala calculated Mr. King's sentencing range to be 188 to 235 months, and sentenced him to 188 months, the low end of the range but above the 15-year minimum. Dkts. 39 and 40.

  Mr. King did not appeal, and in fact had waived his right to take a direct appeal of his conviction or the sentence imposed, or to bring any collateral attack. Dkt. 28 at 13. However, the waiver did not apply to claims of involuntariness or ineffective assistance of counsel related to the plea agreement, or prohibit him from seeking a sentence reduction based on a change in the applicable law that was expressly made retroactive. *Id.* at 13-14. On June 21, 2016, he filed a motion under 28 U.S.C. § 2255 arguing that his 2008 aggravated battery conviction no longer qualified as a violent felony based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), and therefore he should no longer be subject to the 15-year minimum sentence under § 924(e). *See*

*United States v. King*, No. 16 CV 50196 (N.D. Ill.) at Dkt. 1. In response, the government conceded that the 2008 aggravated battery was no longer a violent felony for purposes of § 924(e). *Id.* at Dkt. 9. But Judge Kapala denied Mr. King's § 2255 motion because of a 1997 state conviction for possession with intent to deliver cocaine, which Judge Kapala concluded served as the third prior conviction for a violent felony or serious drug offense necessary to qualify as an armed career criminal. *Id.* at Dkt. 11. The Seventh Circuit denied Mr. King's request for a certificate of appealability. *Id.* at Dkt. 20.

Mr. King now seeks compassionate release under the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A)(i). He offers two "extraordinary and compelling reasons" for an early release. First, he contends that his high blood pressure puts him at greater risk of developing serious complications should he contract COVID-19. Second, he contends that if sentenced today he would not qualify as an armed career criminal subject to a minimum 15-year sentence.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons brought on the defendant's behalf, or one brought by the defendant himself. *See* 18 U.S.C. § 3582(c)(1)(A). A reduction under § 3582(c)(1)(A)(i) may be based only on "extraordinary and compelling reasons," and must take into account the sentencing factors set out at 18 U.S.C. § 3553(a). The defendant bears the burden of establishing that he or she is entitled to compassionate release under the First Step Act. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020). Before filing such a motion himself, a defendant must first ask his warden to seek a reduction on his behalf and either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A). The parties agree that Mr. King exhausted his administrative remedies before filing his motion under the First Step Act, *see* Response [54] at 8-9, so the Court will assume he did. For a motion brought on the defendant's behalf by the Bureau of Prisons, the court may grant the motion only if a reduction would be consistent with policy statements issued by the U.S. Sentencing Commission at U.S.S.G. § 1B1.13. *See* 28 U.S.C. § 3582(c)(1)(A). For a motion the defendant brought himself, the court is not constrained by the Sentencing Commission's policy statement, though it may guide the court's exercise of its discretion in determining whether the reasons offered by the defendant are "extraordinary and compelling." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

**I.     Extraordinary and Compelling Reason**

**A.     High Blood Pressure**

The Court prefaces its analysis of Mr. King's arguments regarding the risks he faces from COVID-19 by recognizing that it, as well as the rest of the world, is still learning about the virus and therefore, is making its best judgments based upon the information that is currently available. *See, e.g., Cassell, et al., v. Snyders*, 990 F.3d 539, 549 (7th Cir. 2021) ("Governments and citizens have thus been forced to act with imperfect knowledge."). According to Mr. King's motion, he suffers from high blood pressure and a continuous dry cough. Motion [44] at 1. He

is treating his high blood pressure with medication, exercise, and trying to eat healthier, though he says his efforts to improve his health have been unsuccessful. *Id.* In support of his motion, he submits medical records, including one from March 25, 2021, which notes that his high blood pressure "is not particularly well controlled," though his "10-year cardiac risk does not meet the treatment threshold," and he was advised to "reduce his sodium intake." Medical Records [55] at 2. In his supplemental motion, he also notes that being 45 years old and African-American also put him at increased risk of severe illness should he contract COVID-19. Supplemental Motion [49] at 6. According to his medical records, on September 22, 2020, while at his current facility, FCI Oxford, he tested positive for COVID-19. Supplemental Motion [49] at 74. He claims during his infection he suffered from fever, stomach cramps, diarrhea, shortness of breath, chest pains, and a dry cough. Motion [44] at 3. He has refused the COVID-19 vaccine. Supplemental Motion [49] at 84. He argues that his underlying conditions, the widespread instances of COVID-19 at FCI Oxford, and the fact that persons who have already been infected with COVID-19 once are not necessarily immune from catching it again, create an extraordinary and compelling reason for a compassionate release.

The court disagrees. To begin, "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Mr. King does not assert that he is unable to receive the vaccine because of allergies or a previous adverse reaction to vaccines. Accordingly, any elevated risk "is self-incurred." *Id*. Second, high blood pressure "possibly . . . can" make one more likely to get severely ill from COVID-19, unlike other heart conditions that "can" make you more likely to get severely ill. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 28, 2021). Although he experienced discomfort during his last bout of COVID-19, he does not contend that his high blood pressure caused him to become severely ill. Finally, in exercising its discretion, a court may take into consideration the state of the pandemic and an institution's efforts to contain it. *See United States v. Young*, 834 Fed. Appx. 268, 269-70 (7th Cir. 2021). Currently there are no confirmed cases of COVID-19 at FCI Oxford among either inmates or staff, and so the virus is not widespread as Mr. King contended. *See* https://www.bop.gov/coronavirus/index.jsp (last visited September 28, 2021).

      **B.**      **Changes to Sentencing Laws**

Next. Mr. King argues that changes in sentencing laws since he was sentenced offer another extraordinary and compelling reason to grant him compassionate release. Specifically he relies on *United States v. Ruth*, 966 F.3d 642, 650 (7th Cir. 2020), in which the Seventh Circuit concluded that Illinois defines cocaine more broadly than federal law and, as a result, convictions under Illinois law for cocaine offenses cannot serve as predicate offenses under the Armed Career Criminal Act. Mr. King's prior conviction for a cocaine offense in Illinois was one of the three required convictions underlying his designation as an Armed Career Criminal subject to a minimum 15-year sentence.

The principal path available to inmates challenging their federal sentence is 28 U.S.C. § 2255, as Mr. King demonstrated when he challenged the continuing use of his 2008 aggravated battery conviction as a predicate offense under the Armed Career Criminal Act following the

Supreme Court's 2015 decision in *Johnson v. United States*. The Seventh Circuit has expressed doubt that the "scope of the discretion conferred by § 3582(c)(1)(A) would allow the compassionate release statute to operate in a way that creates tension with the principal path and conditions Congress established for federal prisoners to challenge their sentences," specifically identifying that path to be 28 U.S.C. § 2255. *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) This Court expresses no opinion on his chances of success following that path or where it might lead. But Mr. King does not contend that a successive §2255, or a § 2241 petition brought under the savings clause of § 2255(e), are unavailable to him, and this Court declines to exercise its discretion to allow Mr. King to do an end-run around the path to challenging sentences that Congress established.

For these reasons, the Court finds in an exercise of its discretion that neither Mr. King's health issues nor changes to sentencing laws that might affect his status as an armed career criminal, independently or in combination, serve as an extraordinary and compelling reason under § 3582(c)(1)(A)(i) for compassionate release.

## II.     Sentencing Factors of 18 U.S.C. § 3553(a)

Even if Mr. King had identified an extraordinary and compelling reason for a compassionate release, the Court's review of the sentencing factors set out in 18 U.S.C. § 3553(a) would not favor reducing Mr. King's sentence. Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are the following:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from future crimes by the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). To those ends, the court must consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

. . .

(3)     the kinds of sentence available;
(4)     the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
(5)     any pertinent policy statement [in the Sentencing Guidelines];
(6)     the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

Mr. King's offense was very serious because it involved his possession of a stolen semi-automatic handgun by a felon. The Court notes that although the government dropped the heroin count, in his plea agreement Mr. King nevertheless admitted possessing a quantity of heroin that he intended to sell to street-level customers, an attempt to financially profit from the addictions of others, and spread the scourge of drugs, specifically an opioid, within the Rockford community.

The Court also considers Mr. King's serious criminal history. His first reported offense occurred when he was just 14 years old. He was placed on probation for theft and battery. Presentence Investigation Report ("PSR") [29] at 6. At 15 he was placed on probation for aggravated criminal sexual abuse. *Id.* at 7. His probation was revoked in both cases for failing to appear for public service work and failing to appear in court. *Id.* at 6-7. His crimes continued into adulthood, including the offenses previously discussed—1997 convictions for aggravated battery and a cocaine offense, a 2005 conviction for domestic battery, and a 2008 conviction for aggravated battery—plus convictions in 2009 and 2012 for possession of cannabis, and convictions for driving uninsured or without a license, resisting a peace officer, and obstruction of justice. His probation for the 1997 cocaine offense was revoked after he committed an additional offense while released. PSR [29] at 11.

In addition to evidence that was available to the sentencing judge, this Court is also able to take into account evidence of Mr. King's post-sentencing history and characteristics. According to his reentry plan, Mr. King earned his GED in 2017 and completed numerous other courses his facility offers including drug education courses, a course on thinking like an economist, cognitive behavior and anger management programs, and he obtained a custodial maintenance certification. Dkts. 47 at 3, 49 at 19. He works in clothing issue, where he is reported to be doing an "outstanding job." Dkt. 47 at 3. He has one reported disciplinary infraction involving phone abuse, for which he lost 14 days good conduct time. *Id.* at 7. He has satisfied his financial obligations. *Id.* at 4. Upon his release he hopes to obtain employment and transition back into society with support from his girlfriend, mother, and other family members. Dkt. 49 at 19.

Mr. King also asks the Court to also consider that his incarceration has been more brutal than normal because of isolation during lockdowns implemented to stop the spread of the virus, as well as the fear of contracting the virus. Supplemental Brief [49] at 15. Other courts have deemed the harshness of prison life during a pandemic to be a relevant consideration for a motion for compassionate release. *See, e.g., United States v. Crumble*, No. 16 CR 102, 2021 U.S. Dist. LEXIS 97626, at *15-16 (E.D. Wisc. May 24, 2021). But those courts look for particularities on how that defendant's experience has been altered, rather than the generalities Mr. King has offered. In any event, isolation and fear during the pandemic have also adversely affected persons who are not incarcerated. *See* https://www.cdc.gov/mentalhealth/stress-coping/cope-with-stress/index.html ("Public health actions, such as social distancing, are necessary to reduce the spread of COVID-19, but they can make us feel isolated and lonely and can increase stress and anxiety.") (last visited September 28, 2021). Mr. King contends that the level of anxiety was higher in jail because inmates had no control and were at the mercy of the

Bureau of Prisons giving them access to personal protective equipment. Suppl Brief [49] at 15. But personal protective equipment was in short supply for everyone at the beginning of the pandemic, and the fact that FCI Oxford has no reported cases of COVID-19 suggests that the measures it implemented did protect inmates and staff.

The Court commends Mr. King for all of his accomplishments, including furthering his education and obtaining life and job skills that will benefit him once released. His hard work and dedication will serve him well upon his release and reintegration into society. However, the Court must balance those favorable aspects of Mr. King's history and characteristics against the less favorable aspects, such as his long history of criminal conduct. While Mr. King contends that his time incarcerated has taught him that he can no longer violate the law and he has been deterred from further criminal conduct, the Court notes that his prior periods of incarceration did not deter the conduct underlying this conviction. Granted, those stints were for significantly shorter periods of time than his current sentence, but the fact that they did not deter him from future conduct warrants a significant sentence in this case.

On balance, considering both his current accomplishments as well as his history and characteristics and the serious nature of his offense, and in an exercise of its discretion, the Court is not convinced by Mr. King's assertions that he presents no risk of recidivism or that he should be released.

## CONCLUSION

For the reasons given, Mr. King's motions for a sentence reduction under the First Step Act [44] and [49] are denied.

Date: September 28, 2021         By: _____
                                     Iain D. Johnston
                                     United States District Judge